UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ALLTEL CORPORATION                                    PLAINTIFF
D/B/A VERIZON WIRELESS

VS.                          CIVIL ACTION NO. 3:19CV740TSL-RHW

CITY OF JACKSON, MISSISSIPPI,
ET AL.                                               DEFENDANTS

MEMORANDUM OPINION AND ORDER

This is an action by Alltel Corporation d/b/a Verizon

Wireless (Verizon) for alleged violations of the

Telecommunications Act of 1996 (TCA), 47 U.S.C. § 332(c)(7)(B),

from the City of Jackson's denial of an application to place a

wireless communications facility, a cellular tower, near the

intersection of Terry Road and Lakeshore Road in South Jackson

in order to fill an alleged gap in cellular coverage.  Verizon

alleges that the City's decision to deny Verizon permission to

build a 150-foot high monopole at the subject location violates

the TCA because its decision was not supported by "substantial

evidence," 47 U.S.C. § 332(c)(7)(B)(iii).  Verizon has requested

a permanent injunction ordering the City to approve its

application and issue all approvals necessary to allow

construction of the proposed cell tower, as described in

Verizon's application.  The case is presently before the court

on Verizon's motion for partial summary judgment on its claim

for permanent injunctive relief.  The City has responded in

1

opposition to the motion.  The court, having considered the
memoranda of authorities, together with attachments, submitted
by the parties, concludes that Verizon's motion is well-taken
and should be granted.

### Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil
Procedure, "[t]he court shall grant summary judgment if the
movant shows that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).  The moving party "bears the burden of
establishing that no genuine issue of material fact exists."
Eastman Mach. Co., Inc. v. United States, 841 F.2d 469, 473 (2d
Cir. 1988) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144,
157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970)).  If the
moving party satisfies its burden, then the non-movant "must set
forth specific facts showing that there is a genuine issue for
trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106
S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (quotation and footnote
omitted).  A genuine issue of material fact exists if "the
evidence is such that a reasonable jury could return a verdict
for the nonmoving party."  Id. at 254, 106 S. Ct. 2505.

### Telecommunications Act of 1996

The Telecommunications Act of 1996 "generally preserves
'the traditional authority of state and local governments to

regulate the location, construction, and modification' of wireless communications facilities like cell phone towers, but imposes 'specific limitations' on that authority." T-Mobile S., LLC v. City of Roswell, 574 U.S. 293, 300, 135 S. Ct. 808, 190 L. Ed. 2d 679 (2015) (quoting Rancho Palos Verdes v. Abrams, 544 U.S. 113, 115, 125 S. Ct. 1453, 161 L. Ed. 2d 316 (2005)).  One of those limitations is that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."  47 U.S.C. § 332(c)(7)(B)(iii).

The substantial evidence standard under the TCA is the same as the traditional substantial evidence standard used by courts to review agency decisions.  That is, "substantial evidence" is

> such reasonable evidence that a reasonable mind would
> accept to support a conclusion.  A finding of
> substantial evidence requires more than a mere
> scintilla and less than a preponderance.  The
> reviewing court must take into account contradictory
> evidence in the record.  However, the reviewing court
> may not re-weigh the evidence or substitute [its]
> judgment for the judgment of the local government.
> Substantial evidence review is therefore "highly
> deferential."  The plaintiff carries the burden of
> proving that no substantial evidence supports the
> local government's decision.
>
> In the context of the Telecommunications Act, the
> substantial evidence standard limits the types of
> reasons that a zoning authority may use to justify its
> decision.  First, generalized concerns about
> aesthetics or property values do not constitute
> substantial evidence.  Second, because the

3

Telecommunications Act is centrally directed at
whether the local zoning authority's decision is
consistent with the applicable zoning requirements, .
. . courts have consistently required that the
challenged decision accord with the applicable local
zoning law.

In sum, [the reviewing court] must determine whether
[the local government] had some reasonable evidence,
beyond mere generalized concerns, to support the
reasons it gave for applying its zoning standards the
way it did.

U.S. Cellular Corp. v. City of Wichita Falls, Tex., 364 F.3d

250, 255–56 (5th Cir. 2004) (internal citations and quotation

marks omitted).

City of Jackson's Zoning Ordinance

Under the City of Jackson's Zoning Ordinance, the City

Council has the authority to regulate and restrict various

subjects related to building and land use within the city

limits.  Included in this grant of authority, the City has power

over the location and use of buildings, other structures, and

land for business, industrial, residential, or other purposes.

While the community is divided into substantially uniform

districts, "it is recognized that there are certain uses which

are generally compatible with the land uses permitted in a

zoning district, but due to their unique characteristics,

require individual review to ensure the appropriateness and

compatibility of the use on any particular site."  Zoning

Ordinance § 1701.01-A.  Accordingly, use permits may be granted

4

by the City Council for approved uses enumerated in each of the
zoning districts.  Id.  Applications for use permits are
initially made to the Planning Board, which, following review,
makes a recommendation whether to approve or deny the
application.  Ultimately, however, the City Council has the sole
discretion whether to approve or deny an application.  Zoning
Ordinance §§ 1502-A, 1506-A, 1703.08-A, 1703.06-A.

The zoning ordinance requires that the City Council, when
evaluating a use permit application, consider the extent to
which:

1. The proposed use is compatible with the character
of development in the vicinity relative to density,
bulk and intensity of structures, parking, and other
uses;

2. The proposed use will not be detrimental to the
continued use, value, or development of properties in
the vicinity;

3. The proposed use will not adversely affect
vehicular or pedestrian traffic in the vicinity;

4. The proposed use can be accommodated by existing or
proposed public services and facilities including, but
not limited to, water, sanitary sewer, streets,
drainage, police and fire protection, and schools;

5. The proposed use is in harmony with the
Comprehensive Plan;

6. The proposed use will not be hazardous,
detrimental, or disturbing to present surrounding land
uses due to noises, glare, smoke, dust, odor, fumes,
water pollution, vibration, electrical interference,
or other nuisances.

Jackson Zoning Ordinance § 1701.02-A.  As the City acknowledges, this is not a "requirements checklist", but rather criteria for the Council to consider when reviewing an application for a use permit.

Facts

On June 13, 2019, Verizon applied to the City of Jackson for a use permit to construct a 150-foot-tall monopole cell phone tower on C-3 commercial property located at 196 Lakeshore Road.  Verizon had leased an 80-foot square near the rear of the 1.1 acre parcel from the property owner on which it proposed to locate the tower for the stated purpose of filling a gap in its coverage and to enable Verizon to "offload" usage from its existing sites in the area to allow them to operate more effectively.  As stated in the City's zoning ordinance, the purpose of a C-3 general commercial district is "to provide for the preservation and perpetuation of retail and commercial enterprise, to provide areas for the development of retail type and personal service type commercial, community, and regional shopping centers of integrated design and high density development of commercial businesses in certain areas adjacent to major transportation arteries or thoroughfares within the City."  Zoning Ordinance § 702.05.  Under § 702.05.1(a), use permits issued in accordance with the requirements of the zoning ordinance are permitted for commercial communication towers on

C-3 commercial property.  Section 1104-A states that "commercial communication towers located in C-3 General Commercial. . . shall require a Use Permit. . . with the exception of towers located on property owned by the City of Jackson.  Sites for towers shall be large enough to contain debris resulting from tower failure and falling ice and a security fence along the perimeter of the site shall be required to prevent vandalism. It is the intent of this Ordinance to encourage co-location of attachments to towers and other structures by all commercial communication operators; thus each applicant for a permit shall submit a statement of any and all efforts of co-location."

Following review of Verizon's application packet, the City's planning director certified to the City's zoning administrator that the proposed use permit conformed to the Comprehensive Plan for City Development.  The zoning administrator, in turn, prepared and submitted to the City Planning Board her "staff report" in which she noted that the proposed tower was a permitted use of the subject property and recommended approval of the application.  The staff report recited that "[t]he objective for the construction of the commercial telecommunications tower is to improve and enhance access to high speed cellular signals for the residents and businesses in the area.  It will also improve and enhance the E911 service to the area."

7

On August 28, 2019, in accordance with governing zoning ordinance provisions, the City Planning Board held its public hearing on Verizon's application.[1]  David McGeehee, who appeared on behalf of Verizon, described Verizon's need for the proposed tower to fill a coverage gap.  McGeehee explained that co-location was not feasible to meet the need for service because, while there was a City-owned tower at Fire Station #22, just three-quarters of a mile away, it was too far to the west to meet the coverage gap, all as explained more fully in the report of Nicholas Aung, a Verizon radio frequency engineer, provided as part of Verizon's application packet.

Claude McCants, who identified himself as vice president of the Association of South Jackson Neighborhoods as well as an area resident whose home is within a thousand feet of the proposed tower, spoke at the hearing in opposition to Verizon's application and submitted a petition opposing the proposed tower signed by twenty-one residents.  (The petition did not identify a basis for the residents' opposition but, presumably, they, or at least most of them, shared McCants' concerns.)  McCants opposed the application primarily on the basis that the proposed

---

[1] Section 1702-A of the City's zoning ordinance states:  "No action shall be taken concerning Rezoning, Text Amendments, Special Exceptions, Variances, or Use Permits until after a public hearing in relation thereto, at which parties in interest and the general citizenry shall have an opportunity to be heard."

tower was "unsightly" and would be visible to travelers as they
approached any of several area neighborhoods.  Mr. McCants
stated, in part:

> This is a monopole tower, one of the ugliest kind…
> This tower is really -- will be unsightly to a
> neighborhood. …  Lakeshore is what [transportation
> planners] call a collector.  That means that
> neighborhoods come out into it and deed [sic] out to
> go out to your major streets, okay.  Everybody who
> comes in Lakeshore off Terry Road is going to see an
> ungodly 150-foot tower sitting there.
> . . .
> I feel that another site should really be chosen
> because that is an ungodly sight.  . . . There is
> nothing to justify, you know, their putting this tower
> there.  They said they want to get more coverage.
> Well, I can submit Verizon did not consider all of the
> possible applications. . . .
> I'm just saying right now that this is more of an
> industrial application in an area right now that's
> zoned single family.  I don't feel an industrial
> application that is unsightly belongs in an area
> that's mostly neighborhoods. . . .
> We would rather that Verizon . . . try to locate an
> antenna, if they need that coverage, to locate an
> antenna at some other place in the area . . . .
> . . . [T]his is not something that we want in our
> neighborhood. I think that there's a better location
> and I think that they should take the time to seat
> [sic] that location.
> There are a lot of neighborhoods in that area, and
> these are some of the better neighborhoods in south
> Jackson.  And what we don't want on our doorway – the
> gateway to those communities is on Lakeshore.  Okay?
> You have some fine real estate in that area.  And the
> gateway is right there, and at our gateway, right at
> that location, they want to put a massive 150-foot
> tower.
> I just don't see that that's something possibly we'd
> want to do.  I just don't get it.  I think that there
> are other alternatives, and I think that they need to
> look further.

Mr. McCants also expressed concern that the tower could

pose a danger to residents' health, stating:

> There will be three towers within that area and there
> are health issues related to telecommunication towers,
> electromagnetism in that area.  And there will be
> three towers we're talking about, Brookwood, which was
> already there, Fire Station 22, and talking about a
> possible third location.  That's within very close
> proximity to all the neighborhoods.  I think that
> we've had enough towers in that area.  They need to
> move this tower further out because you're talking
> about health implications, and that has not been
> addressed.

The Planning Board voted to approve the application, finding

that "the criteria for granting a Use Permit [has] been met."

In its presentation to the City Council, the Planning Board

stated that it recommended approval of the application based

upon "not being detrimental to the continued use, value, or

development of properties in the vicinity"; "not adversely

affecting vehicular or pedestrian traffic in the vicinity"; and

"being accommodated by existing or proposed public services and

facilities. . . ."

The City Council held a public hearing on Verizon's

application on September 16, 2019.  The City's Zoning

Administrator explained in her presentation that the property

adjacent to the site of the proposed cell tower is, to the

immediate west and south, vacant acreage zoned C-3 general

commercial; to the north, C-3 commercial property; and to the

east, retail commercial, zoned C-3.  McGeehee again appeared on

behalf of Verizon, explained its need for the tower and why co-
location was not an option.  McCants again spoke in opposition
to the proposed tower, objecting that "many communities use
Lakeshore as a gateway", and "everybody coming out on Lakeshore
and Terry Road" will pass by and notice "this gigantic 150-foot
[monopole] tower", which "is not one of your prettier features"
and is "probably one of the poorer designs as far as how it
looks."  He insisted, "Our neighborhood associations are totally
against it."

Following the hearing, the City Council voted 3-2 to deny
Verizon's application.  The City issued a written denial of the
application, stating that "[t]he City Council was of the opinion
the criteria for granting the Use Permit had not been met."

Analysis

Under the TCA, the City's decision to deny Verizon's
application for a use permit for its proposed cell tower will be
upheld it if is "supported by substantial evidence contained in
a written record."  47 U.S.C. § 332(c)(7)(B)(iii).  Verizon has
the burden to prove that no substantial evidence supports the
City's  decision." U.S. Cellular Corp. 364 F.3d at 256.

The Supreme Court has held that the "substantial evidence"
requirement of § 332(c)(7)(B) necessarily implies that local
zoning authorities must state their reasons when they deny cell
phone tower citing applications," T-Mobile S., LLC v. City of

Roswell, Ga., 574 U.S. 293, 302, 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015), because "'courts cannot exercise their duty of [substantial-evidence] review unless they are advised of the considerations underlying the action under review,'" id. (quoting SEC v. Chenery Corp., 318 U.S. 80, 94, 63 S. Ct. 454, 87 L. Ed. 626 (1943)).  "[T]hese reasons need not be elaborate or even sophisticated, but rather . . .  simply clear enough to enable judicial review."  Id.  The reasons must be in written form, "issued essentially contemporaneously with the denial," id. at 307, but they "need not appear in a denial letter" or "be given in any particular form", id. at 303; "Congress imposed no specific requirement on that front, but instead permitted localities to comply with their obligation to give written reasons so long as the locality's reasons are stated clearly enough to enable judicial review…," id.  In light of these requirements, the court, in reviewing a denial decision, is limited to the evidence in the administrative record, see Verizon Wireless Pers. Commc'ns, LP v. Harrison Cty., No. 1:14CV389-LG-RHW, 2015 WL 12564945, at *3 (S.D. Miss. Nov. 9, 2015) ("[I]t would be improper to consider evidence outside the administrative record to make this determination."), and to the reasons asserted by the locality when it made the decision to deny the application, see Preferred Sites, LLC v. Troup Cty., 296 F.3d 1210, 1220 (11th Cir. 2002) (locality "may not rely on

rationalizations constructed after the fact to support the denial of [a provider's] application"); U.S. Cellular Corp. v. Bd. of Adjustment of City of Seminole, Okla., 180 F. App'x 791, 794 (10th Cir. 2006) (quoting National Tower, LLC v. Plainville Zoning Bd. of Appeals, 297 F.3d 14, 21 (1st Cir. 2002) ("[a] board may not provide the applicant with one reason for a denial and then, in court, seek to uphold its decision on different grounds.").

The City herein contends that Verizon's application was denied because criteria set forth in the zoning ordinance as relevant to a decision on granting a use permit were not satisfied.  However, the City did not identify, either in its denial letter or at the hearing on Verizon's application, any criteria that it had determined were not met.  The denial letter simply recited, without explanation or elaboration, that "[t]he City Council was of the opinion the criteria for granting the Use Permit had not been met."  This does not satisfy the TCA's substantial evidence requirement.  See Harrison Cty., 2015 WL 12564945, at *6 (citing Town of Amherst v. Omnipoint Commc'ns Enters., Inc., 173 F.3d 9, 16 (1st Cir. 1999)) ("Denials of permits that are based on 'hollow generalities' … do not satisfy the substantial evidence test").

As reflected in the transcript of the September 2019 hearing before the City Council, two members of the City Council

stated their reasons for voting against Verizon's application. Those reasons, however, did not relate to whether the criteria for granting a use permit had been met. Nor were they valid reasons for denial of the application. Councilman Kenneth Stokes stated simply that he thought "[i]t seem[ed] like [Verizon was] trying to force something down [citizens'] throats" and believed "it would be wrong for the government to approve [it] when the citizens are against it." And Councilman Aaron Banks felt he had "a responsibility . . . to the people that elected [him]" and those people "had made their voices very clear to oppose" the application. He believed that "even if [the proposed tower] was something that was viable, it comes off disrespectful to do anything or something of this sort and not even have any type of communication with the leaders of that neighborhood who I am responsible for contacting and dealing with every day." He "stress[ed] the importance of communicating with those neighborhoods and neighborhood associations around," and concluded that "a lot of people want to do business, but in order to do business and have it done right, you want the respect of the neighborhood association and the people that are in that neighborhood, and I think that's just fair. . . . I'm going to stand with the decision and the advice of the citizens of people of Ward 6."

Jackson's zoning ordinance contains specific notice requirements:  Notice must be given to all property owners and neighborhood associations within 160 feet and 1,000 feet, respectively, of the site of the proposed tower.  Zoning Ordinance § 1703.02.4-A.  Verizon complied with that requirement.  Beyond that, nothing in the zoning ordinance requires that an applicant for a use permit, whether for a cell tower or any other use, communicate with or work with area residents or businesses as a condition of obtaining approval of a use permit application.  Is it a good idea to do so?  Perhaps. Is it required?  No.  Thus, the fact that Verizon did not engage in communication with area residents or neighborhood association leaders does not constitute substantial evidence for denial of its application.

The City Council certainly was warranted in considering the concerns of residents.  But the mere fact that some residents opposed Verizon's application was not a valid basis for denial of the application unless the *substance* of those concerns constituted substantial evidence and the *substance* of their objection – and not merely the *fact* of their objection – was the reason for the Council's decision to deny the application. Here, the petition presented to the City Council contained the signatures of twenty-one residents.  However, the petition itself contained no information as to the basis for their

15

collective opposition or for any individual's objection.  The
petition merely recited, "We the undersigned members of the
Association of South Jackson Neighborhoods oppose the Special
Exception for a wireless communication facility (monopole tower)
in the vacant field behind the property located at 196 Lakeshore
Drive, Jackson, MS."  There is otherwise no record evidence as
to why any resident, other than Mr. McCants, opposes the tower.
Councilman Banks did state that he had spoken with one of the
individuals who signed the petition and that this individual
expressed concern "about the electromagnetic and all the other
kind of stuff."  However, this objection likewise would not
constitute substantial evidence to support the Council's denial.
See Harrison Cty., 2015 WL 12564945, at *7; § 332(c)(7)(B)(iv)
("[N]o state or local government or instrumentality thereof may
regulate the construction of personal wireless facilities on the
basis of the environmental effects of RF emissions to the extent
that such facilities comply with the Commission's regulations
concerning such emissions.");see also Telespectrum, Inc. v. Pub.
Serv. Comm'n of Kentucky, 227 F.3d 414, 424 (6th Cir.
2000)("concerns of health risks due to the emissions may not
constitute substantial evidence in support of denial by
statutory rule…..") (quotation omitted).

    Even if the court assumes that these individuals shared the
concerns expressed by Mr. McCants, those concerns do not amount

to substantial evidence for the Council's decision.  As noted
*supra*, the principal basis for Mr. McCants' objection to the
tower is that it is, in a word, ugly, and that he and other
residents (or visitors in the area) will have to pass by and see
this ugly tower when traveling to and from the several
neighborhoods in the general vicinity – including some upscale
neighborhoods.  While concerns relating to aesthetics can
constitute substantial evidence, "generalized concerns about
aesthetics . . . do not constitute substantial evidence."
Wichita Falls, Tex., 364 F.3d at 255-56.  In this regard, the
Eleventh Circuit has explained as follows:

> "[A] blanket aesthetic objection does not constitute
> substantial evidence under § 332.  Such a standard
> would eviscerate the substantial evidence requirement
> and unnecessarily retard mobile phone service
> development."  [Michael Linet, Inc. v. Vill. of
> Wellington, Fla., 408 F.3d 757, 762 (11th Cir. 2005)].
> Nevertheless, . . . "[a]esthetic objections coupled
> with evidence of an adverse impact on property values
> or safety concerns can constitute substantial
> evidence."  [Id.]; see also Preferred Sites, LLC v.
> Troup Cty., 296 F.3d 1210, 1219 (11th Cir. 2002)
> (explaining that "[a]esthetic concerns may be a valid
> basis for denial of a permit if substantial evidence
> of the visual impact of the tower is before the
> board").  Thus, while in certain circumstances
> particularized aesthetic concerns may be a valid basis
> for the denial of an application, "[m]ere generalized
> concerns regarding aesthetics ... are insufficient to
> create substantial evidence justifying the denial of a
> permit under [the Telecommunications Act]."
> [Preferred Sites, 296 F.3d at 1219].

Mun. Commc'ns, LLC v. Cobb Cty., Georgia, 796 F. App'x 663, 668-
69 (11th Cir. 2020).  Mr. McCants' opinions, as expressed in the

hearings, are plainly of the "generalized concerns" variety. There is no evidence that the proposed tower can be seen from the neighborhoods to which Mr. McCants referred (or in which any of those who signed the petition reside).  As noted in Verizon's application, the nearest neighborhood is a quarter mile from the proposed site of the tower,[2] and the area between the neighborhoods and the proposed site of the tower, as stated by Verizon's representative and confirmed by satellite photographs, is heavily treed, thus obscuring the tower from sight of homes in the neighborhoods.[3]  Mr. McCants' concern in this regard was solely that residents of these neighborhoods would have to pass by what he considered to be this unsightly tower when traveling to and from their homes.  That, however, is not substantial evidence to deny Verizon's application.[4]

---

[2]   There are a few individual homes that are closer (the nearest one being 675 feet from the site); but it does not appear that residents of those homes objected to Verizon's application.

[3]   While not relevant, since there is no evidence the tower could be seen from as close as a quarter mile away, it is interesting to note that the closest any of the individuals who signed the petition lives is nearly a mile from the proposed site.  Most of those individuals live nearer to two miles away, and a few live as far as three, four and five miles away.  One, it seems, does not even live in South Jackson.

[4]   In response to Verizon's motion, the City argues that the Planning Board's recommendation for approval of Verizon's application cited only three of the six criteria that the zoning ordinance requires be considered in evaluating a use permit application, and it argues the remaining three criteria on which

The City argues that this case is strikingly similar to Verizon Wireless Tennessee Partnership v. Desoto County, Mississippi, 419 F. Supp. 3d 950 (N.D. Miss. 2019), in which Judge Michael Mills denied Verizon's motion for an injunction ordering Desoto County to approve its proposed cell tower; the City contends the same result should obtain here.  This case, however, bears little resemblance to the Desoto County case.  In that case, in denying Verizon's application for a conditional use permit to construct a cell tower, the Desoto County Board of Supervisors cited five specific reasons for its decision, including that Verizon had provided "insubstantial proof as to whether there exist[ed] a gap in coverage for the area to be serviced by the proposed cell tower" and as to whether or not

_____

the Planning Board "did not base its approval" or which it "excluded" or "did not include" in its recommendation for approving Verizon's application were/are "consistent with" and/or "called into question by" and/or "impacted by" the "evidence presented to/and concerns expressed by . . . the City Council at the hearing on Verizon's application".  That is, according to the City, Mr. McCants' statements, the neighborhood association petition opposing the application, and the City Council's comments show that the proposed use was not "compatible with the character of development in the vicinity relative to . . . other uses," that it was not "in harmony with the Comprehensive Plan," and that it was hazardous, detrimental, or disturbing to present surrounding land uses due to . . . other nuisances."  However, not only was this not the reason given for the Council's decision, but also, for the reasons explained in the text, the record is devoid of evidence that would have supported a decision by the Council that any of these three criteria were not satisfied.

19

existing towers could be enhanced to provide improved service, and that there was sufficient evidence that there would be negative "aesthetic effects to the community".  Id. at 952. The City herein argues that the proof presented by Verizon in Desoto County as to the existence of a gap in coverage is similar to the proof Verizon presented in its application in this case.  But even if that were true, the fact is, the Jackson City Council, unlike the Desoto County Board of Supervisors, never questioned Verizon's assertion of or the sufficiency of its proof as to a gap in coverage; and the City Council did not purport to deny Verizon's application on the basis that Verizon had failed to adequately demonstrate a need for the construction of a new tower to address a gap in existing coverage.  Notably, in his opinion in Desoto County, Judge Mills distinguished the facts before him from the facts in U.S. Cellular v. Wichita Falls, on the basis that in Wichita Falls, "'U.S. Cellular [had] identified a gap in its coverage in southwest Wichita Falls,' and there [was] no indication in the record that the city had questioned the provider's evidence on this crucial issue."  Id. at 960.  The same is true here:  Verizon identified a gap in coverage and the City Council did not question Verizon's position on this issue.

The City points out that Judge Mills rejected Verizon's position that there was no probative value in the concerns of

local residents about the negative aesthetic effect of the proposed tower.  However, what he found was that because of the weakness of Verizon's proof as to the need for the tower, the concerns expressed by these residents had some "limited probative value".  Significantly, Judge Mills stated, "[I]f this were a case in which Verizon had presented even moderately persuasive evidence that the Proposed Sugarcoated Site would address a true gap in coverage, then this court would likely regard these aesthetics concerns as an insufficient basis to deny the project."  Id. at 957.  Moreover, he found the fact that the tower "would be easily visible from [the objecting residents'] homes [was] objectively significant information, since it distinguishes the tower from one built in a location where it could not be seen from residents' homes."  Id. at 958. In this case, the City did not question whether the tower was needed to address a true gap in coverage.  Moreover, no evidence was presented that Verizon's proposed tower would be visible from any objecting resident's home.  The City's reliance on the Desoto County case is clearly misplaced.

Conclusion

Based on the foregoing, the court concludes that the City Council's decision to deny Verizon's application for a use permit to construct the proposed tower at 196 Lakeshore Road was

not supported by substantial evidence.  It is, therefore, ordered that Verizon's motion for summary judgment on its request for a permanent injunction is granted and Verizon is thus granted a permanent injunction requiring the City of Jackson, Mississippi, to grant its application for a use permit and to issue all approvals necessary to allow said construction.[5]

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 10th day June, 2020.


/s/ Tom S. Lee                .
UNITED STATES DISTRICT JUDGE

---

[5]    Verizon's remaining claims in this cause are now moot.